UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

    -against-

SOPHIA ATIAS and JOSEPH ATIAS,

    Defendants.
------------------------------------------------------------X

**ORDER**
14-CR-403 (DRH)(SIL)

**LOCKE, Magistrate Judge:**

Presently before the Court, on referral from the Honorable Denis R. Hurley, is Defendants Joseph Atias and Sophia Atias's (collectively, "Defendants") motion to compel the law firm Farrell Fritz, P.C. ("Farrell Fritz") to produce documents responsive to a March 20, 2015 Grand Jury Subpoena (the "Subpoena") that were previously produced in a redacted form or were withheld entirely pursuant to the attorney–client privilege and attorney work-product doctrine. *See* Docket Entry ("DE") [128]. Farrell Fritz opposes Defendants' motion. *See* DE [137]. For the reasons set forth herein, Defendants' motion is granted in part and denied in part.

**I.    BACKGROUND**

This criminal action arises out of the sale of the residential property located at 83 Cathedral Avenue, Hempstead, New York (the "Subject Property"). [1] *See* Superseding Indictment, DE [25], ¶ 8.

---

[1] The complete factual background is not relevant to the instant motion and is not addressed at length herein.

1

## A. Sale of the Subject Property

On or about March 9, 2007, Sophia Atias obtained title to the Subject Property, for which she also obtained a mortgage and line of credit from Bank of America. *Id.* at ¶¶ 9, 11. At some time in 2011, the mortgage and line of credit on the Subject Property fell into arrears, and Bank of America commenced foreclosure proceedings. *Id.* at ¶ 12. On or about June 21, 2011, Sacred Heart Academy ("Sacred Heart") contacted Defendants, stating its interest in purchasing the Subject Property. *Id.* at ¶ 13. Thereafter, during the summer and fall of 2011, Defendants negotiated the sale of the Subject Property to Sacred Heart, with Sacred Heart ultimately purchasing the Subject Property for $925,000 on or about March 19, 2012. *Id.* at ¶¶ 13, 24. Farrell Fritz represented Sacred Heart in its purchase of the Subject Property from Defendants. *See* Defendants' Letter Memorandum in Support of Motion to Compel ("Defs.' Mem."), DE [128], at 3-4.

According to an August 21, 2014 Superseding Indictment, during the course of negotiating and selling the Subject Property to Sacred Heart, Defendants devised and executed a scheme to defraud Bank of America in order to cancel Sophia Atias's mortgage debt, including, among other things, requesting an unnecessary short sale of the Subject Property, falsely representing that the sham short sale was negotiated at arms-length, and falsely representing that the short sale was not "flipping" or "straw buying." *See* Superseding Indictment ¶¶ 16-24. Accordingly, Defendants, along with Nicholas A. Pellegrini and Paula Berckhoff, were charged with: (i) one

count of bank fraud in violation of 18 U.S.C. § 1344; and (ii) one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344, 1349.[2] *Id.* at ¶¶ 25-28.

B. **Motion to Compel**

In the March 20, 2015 Subpoena, Defendants demanded that Farrell Fritz produce:

> The Farrell Fritz file in regard to the purchase of 83 Cathedral Avenue, Hempstead, NY 11550 (the "Property"), in March 2012 for Sacred Heart Academy, including but not limited to letter correspondence, file notes and communications, email communications between the period June 2, 2011, and October 31, 2012, between Charles Strain ("Strain") and employees of the Bank of America ("BOA"), including Robert Isaacson, and specifically in connection with the Property.

*See* Defs.' Mem. at Ex. 1.

On or about April 24, 2015, Farrell Fritz produced responsive documents bearing bates stamps FF-000001 through FF-000632, and on or about May 8, 2015, Farrell Fritz produced additional responsive documents bearing bates stamps FF-000633 through FF-0001066 (together, the "Document Production"). *See* Farrell Fritz's Letter Memorandum in Opposition to Motion to Compel ("Farrell Opp'n"), DE [137], at 2. Thirteen emails produced with the Document Production were either partially or entirely redacted (the "Redacted Documents").[3] *See* Defs.' Mem. at 2. Thereafter, in a May 20, 2015 Privilege Log (the "Privilege Log"), Farrell Fritz identified eighty-six documents withheld from production in their entirety on the

---

[2] Nicholas A. Pellegrini pled guilty to conspiracy to commit bank fraud on October 2, 2015, and, at the Government's request, the Superseding Indictment was dismissed as against Paula Berckhoff on January 6, 2016. *See* DE [86], [107].

[3] The redacted emails are bates stamped FF-000092, FF-000095, FF-000387, FF-000457, FF-000481, FF-000553, FF-000557, FF-001070, FF-001074, FF-001085, FF-001088, FF-001094, FF-001101. *See* Defs.' Mem. at 2.

3

basis that they were protected from disclosure pursuant to either the attorney–client privilege or the attorney work-product doctrine (the "Withheld Documents").[4] *Id.* at Ex. 2. According to Farrell Fritz, after receiving the Privilege Log, Defendants "remained radio silent as to the log until now, approximately one year later, literally on the eve of trial." *See* Farrell Opp'n at 2.

In the instant motion to compel, Defendants request "that the Court direct that Farrell Fritz provide[] complete copies of the redacted emails and 'all' the emails listed on the Privileged [*sic*] Log."[5] *See* Defs.' Mem. at 3. With respect to the Redacted Documents, Defendants claim that the "first seven documents are email communications between Strain and another Farrell Fritz attorney," and that they therefore "certainly cannot be considered privileged communications with their client." *Id.* at 3. The remaining Redacted Documents "are blank pages without any descriptive information of the redacted email." *Id.* With respect to the Withheld Documents, Defendants claim that, "[m]ost of the emails are between members of the firm, and relate to discussions about the Property and or pertain to documents enclosed for consideration." *Id.* at 4. The remainder of the Withheld Documents "are email communications with the firm's client 'Sister Jeanne' Ross, then President of Sacred Heart Academy . . . ." *Id.* According to Defendants, "[i]t is reasonable to assume that the emails are reporting the progress of the negotiations to purchase the

---

[4] Although Defendants represent that the Privilege Log contains six pages, Exhibit 1 to Defendants' motion is an eight-page privilege log, with page seven missing.
[5] The Court notes that each of the Redacted Documents, which are produced as Exhibit 2 to Defendants' motion, as well as the basis for redaction, are also included in the Privilege Log. *See* Defs.' Mem. at Ex. 3.

4

Property, pertain to documents necessary to complete the transaction, such as 'contract of sale' or 'closing statement,' and are clearly not within the protection of any privilege." *Id.*

In opposition, Farrell Fritz argues, among other things, that "the Redacted Documents are email communications between [Farrell Fritz attorneys] involving their legal opinions on the underlying facts of advice on the transaction," and are therefore protected from disclosure pursuant to the attorney work-product doctrine. *See* Farrell Opp'n at 3. Farrell Fritz further argues that the Withheld Documents "fall *squarely* within the definition of communications protected by the attorney–client privilege." *Id.* at 2 (emphasis in original).

## II. DISCUSSION

As discussed above, Farrell Fritz relies on both the attorney–client privilege and the attorney work-product doctrine in claiming that the Redacted Documents and Withheld Documents are not subject to disclosure. For the reasons set forth herein, Defendants' motion to compel is granted in part and denied in part insofar as Farrell Fritz must produce the documents withheld pursuant to the attorney work-product doctrine. The Court will conduct an *in camera* review for privilege in the first instance of the documents that Farrell Fritz withheld pursuant to the attorney–client privilege.

### A. **Attorney Work-Product Doctrine**

The federal attorney work-product doctrine protects from disclosure "documents prepared 'in anticipation of litigation or for trial by or for [a] party or by

5

or for that . . . party's representative.'" *Ruotolo v. City of New York*, No. 03 Civ. 5045, 2005 WL 823015, at *1 (S.D.N.Y. Apr. 7, 2005) (quoting Fed. R. Civ. P. 26(b)(3)). Relevant here, the Second Circuit has held that documents are prepared "in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (internal quotation omitted) (emphasis in original). Therefore, the work-product doctrine "does not apply to materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." *Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 505 (E.D.N.Y. 1986) (internal quotation and alteration omitted); *see also New Gold Equities Corp. v. Capital Growth Real Estate, Inc.*, No. 89 Civ. 5472, 1990 WL 180538, at *3 (S.D.N.Y. Nov. 13, 1990) (holding that a document could not "be said to reflect work-product since there was no prospect of litigation at the time [it] was prepared"). To that end, "a 'mere possibility' of future litigation is insufficient to invoke the work-product privilege." *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 145 F.R.D. 298, 302 (E.D.N.Y. 1992). It is well-established that "[t]he party asserting work-product immunity bears the burden of establishing that it applies." *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 46 (E.D.N.Y. 2011).

Here, Farrell Fritz has failed to establish that the documents withheld pursuant to the attorney work-product doctrine are protected from disclosure. Indeed, as Farrell Fritz concedes, the documents withheld pursuant to the work-

product doctrine are communications between attorneys "involving their legal opinions on the underlying facts of advice *on the transaction*"—namely, Sacred Heart's purchase of the Subject Property from Defendants. *See* Farrell Opp'n at 3 (emphasis added). Farrell Fritz does not contend, nor is there any evidence before the Court that would support a reasonable inference, that litigation was anticipated as a result of the sale of the Subject Property to Sacred Heart or at any time prior thereto. To that end, courts have held that communications relating to unrelated business transactions are not protected by the work-product doctrine where there was no reason to anticipate litigation. *See, e.g.*, *Chin v. Rogoff & Co., P.C.*, No. 05 Civ. 8360, 2008 WL 2073934, at *3-4 (S.D.N.Y. May 8, 2008) (holding that the work-product doctrine did not protect from disclosure documents related to an attorney's representation of a client in a prior transaction where "[t]here [was] no evidence . . . that any party was anticipating litigation arising from" the transaction); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 449 (S.D.N.Y. 1995) (holding that documents prepared in "furtherance of a business transaction" were not protected by the work-product doctrine). Because Farrell Fritz has failed to establish the applicability of the work-product doctrine, Defendants' motion is granted with respect to the documents identified in the Privilege Log as being withheld solely on the basis that they are protected from disclosure pursuant to the attorney work-product doctrine.

### B. Attorney–Client Privilege

The attorney–client privilege protects from disclosure "confidential communications made for the purpose of obtaining legal advice." *McGrath v. Nassau Cty. Health Care Corp.*, 204 F.R.D. 240, 243 (E.D.N.Y. 2001) (internal quotation omitted); *see also Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, No. 11-CV-4743, 2013 WL 618744, at *1 (E.D.N.Y. Feb. 19, 2013) ("The attorney–client privilege covers any communication between client and counsel or his employee, that was intended to be and was in fact kept confidential, and was made in order to assist in obtaining or providing legal advice or services to the client.") (internal quotation and alteration omitted). Therefore, the attorney–client privilege protects from disclosure "'(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice.'" *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 160, 2012 WL 651536, at *2 (S.D.N.Y. Feb. 28, 2012) (quoting *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). Moreover, the attorney–client privilege also extends to notes and memoranda memorializing confidential communications with attorneys. *See United States v. Ghavami*, 882 F. Supp. 2d 532, 536 (S.D.N.Y. 2012) (holding that memoranda reflecting privileged communications were not subject to disclosure); *see also Bell v. Pfizer Inc.*, No. 03 Civ. 9945, 2006 WL 2529762, at *4 (S.D.N.Y. Aug. 31, 2006) ("The attorney–client privilege encompasses both information provided to the lawyer by the client and professional advice given by an attorney that discloses such information.") (internal quotation omitted). The party seeking to invoke the attorney–client

8

privilege bears the burden of establishing its applicability, "and courts should construe assertions of privilege narrowly, sustaining the privilege 'only where necessary to achieve its purpose.'" *Favors v. Cuomo*, 285 F.R.D. 187, 197 (E.D.N.Y. 2012) (quoting *In re Cty. of Erie*, 473 F.3d at 418); *see also United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997) ("The burden of establishing the existence of an attorney–client privilege, in all of its elements, rests with the party asserting it.").

Here, based on the parties' submissions, it is unclear whether the documents identified in the Privilege Log as being withheld pursuant to the attorney–client privilege are actually protected from disclosure. Although courts "may rely upon privilege logs supplemented by attorney affidavits" in determining whether a claim of privilege has been adequately supported, *see CSC Recovery Corp. v. Daido Steel Co., Ltd.*, No. 94 Civ. 9214, 1997 WL 661122, at \*2 (S.D.N.Y. Oct. 22, 1997), Farrell Fritz's identification of the sender, recipient, and subject of the communications in the Privilege Log is insufficient to allow the Court to determine whether the relevant communications were both intended to be kept confidential and made for the purpose of obtaining or providing legal advice. *See United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (finding privilege log deficient where it "contain[ed] a cursory description of each document, the date, author, recipient, and 'comments'"); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (holding that a privilege log must provide "sufficient detail to permit a judgment as to whether the document is at least potentially protected from

9

disclosure"). Moreover, Farrell Fritz has not provided any supporting affidavits or declarations that would assist the Court in determining whether the attorney–client privilege applies. Accordingly, to determine whether the documents identified in the Privilege Log as being withheld pursuant to the attorney–client privilege are actually protected from disclosure, the Court will conduct an *in camera* review for privilege in the first instance.[6] *See Weber v. Paduano*, No. 02 Civ. 3392, 2003 WL 161340, at *13 (S.D.N.Y. Jan. 22, 2003) ("When faced with claims of privilege, courts often undertake in camera review in order to supplement the parties' privilege logs and determine the content of the documents."); *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260, 1993 WL 561125, at *2 (S.D.N.Y. Dec. 23, 1993) (determining issue of privilege based on *in camera* review of documents and the parties' letter submissions); *United States v. Davis*, 131 F.R.D. 391, 397 (S.D.N.Y. 1990) (conducting *in camera* review of documents where the court had "no way of discerning what the[] documents may show"). Therefore, Farrell Fritz is instructed to produce the documents withheld from production pursuant to the attorney–client privilege to the Court within ten days of the date of this Order for the purpose of conducting an *in camera* review.

---

[6] Although a claim of privilege may simply be denied where a party submits a privilege log that "is inadequate as a matter of law in that the log just does not provide sufficient information to support the privilege," *see Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 334 (N.D.N.Y. 2006), Defendants do not object to the Court conducting an *in camera* review of the documents withheld from production pursuant to the attorney–client privilege. *See* Defendants' Letter in Reply to Farrell Fritz's Opposition, DE [138], at 3. In any event, "the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *United States v. Zolin*, 491 U.S. 554, 572, 109 S. Ct. 2619, 2631 (1989).

## III. CONCLUSION

For the reasons set forth herein, Defendants' motion to compel is granted in part and denied in part. Farrell Fritz is instructed to produce the documents identified on the Privilege Log as being withheld pursuant to the attorney work-product doctrine to Defendants within ten days of the date of this Order. Farrell Fritz is further instructed to produce the documents identified on the Privilege Log as being withheld pursuant to the attorney–client privilege to the Court within ten days of the date of this Order for the purpose of conducting an *in camera* review.[7]

Dated: Central Islip, New York
July 19, 2016

**SO ORDERED**

s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge

---

[7] Two documents identified in the Privilege Log were withheld pursuant to both the attorney–client privilege and the work-product doctrine. *See* Defs.' Mem. at Ex. 3. Farrell Fritz is instructed to produce those documents to the Court, and not directly to Plaintiff.

11