```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,

        -against-                         MEMORANDUM AND ORDER
                                             14-CR-0403(DRH)
SOPHIA ATIAS and JOSEPH ATIAS,

             Defendants.
-------------------------------X
A P P E A R A N C E S:

For the Government:
     Robert Capers
     United States Attorney
     Eastern District of New York
     100 Federal Plaza
     Central Islip, New York 11722
       By: Charles Kelly, A.U.S.A.

For Sophia Atias:
     LaRusso Conway & Bartling, LLP
     300 Old Country Rd, Suite 341
     Mineola, New York 11501
       By: Robert P. LaRusso, Esq.

For Joseph Atias:
     Law Offices of Jeffrey T. Schwartz
     225 Broadway, Suite 2510
     New York, New York 10007
       By: Jeffrey T. Schwartz, Esq.

HURLEY, District Judge
```

The purpose of this Memorandum and Order is to address the two pending <u>in</u> <u>limine</u> motions.

>   I.  Government's Motion to Preclude Defense From
>       Calling Paula Berckhoff ("Berckhoff") as a
>       <u>Trial Witness</u>

Berckhoff is the spouse of Nicholas Pellegrini. She was an indicted coconspirator along with her husband and the Atiases until the government successfully sought the dismissal of the charges against her.

In seeking to preclude the defense from calling Berckhoff as a witness, the government contends, as a general proposition, that anything she may have to say is irrelevant. (Govt's Letter of Feb. 7, 2017 at 1("Defendants' arguments do not support the proposition that Paula Berckhoff would testify to any material facts.").) But particularly troubling to the prosecution is the defendants' expressed intention to inquire as to the disposition of charges originally lodged against her. That line of inquiry is labeled by the government as both "irrelevant and prejudicial," and subject to preclusion via the operation of Rule 403. (Govt's Letter of June 8, 2016 at 1-3.)

As to the government's blanket objection,[1] the defense proffers and the government has not convincingly disputed, "that Paula Berckhoff's fingerprints are all over the two transactions which are the subject matter of this Indictment." (Defs.' Letter of June 10, 2016 at 2.) Such fingerprints include "that her notarized signature [appears] on many bank, corporate, and closing documents" utilized to effectuate the charged fraud.[2]

---

[1] Parenthetically, the Court notes that it appeared from statements made during the course of oral argument on February 1, 2017, that the government intended to abandon its across-the-board relevancy objection. *See* Feb. 1, 2017 Tr. at 38 ("Our argument is not about can you call her and say is this your name on this document, did you sign this document, anything else they want to do with regard to the facts of the case. It just has to do with the area of the disposition of her case.")

[2] *See also* proffer in Defs.' Letter of June 10, 2016 at unnumbered page 5 ("An examination of the documents related to

Under the circumstances, there is no legitimate basis to prevent Berckhoff from being called as a witness for she obviously has some information about the facts underlying, or at least bearing on, the charged bank fraud. Whether her testimony, if elicited, will aid the defense is an open question. But to "close that door" on the information and arguments advanced would unduly infringe on the defendants' right, albeit not obligation, to mount a defense.

With respect to the government's objection to Berckhoff's being asked questions about the disposition of her case, the question arises whether that testimony is relevant for any material purpose. To the extent she testifies for the defense, it may be helpful to the jury in evaluating her credibility and possible bias towards the prosecution to learn of the dismissal of her case. Moreover, the government presently "does not object to the defense addressing these matters on the cross examination of defendant Nicholas Pellegrini." (Govt's

---

the short sale, some marked by the government as Exhibits 12, 14, 15, and 20 and attached as Exhibit 3, reflect that (1) a Paula Berckhoff was the signatory to the short sale contract on behalf of the alleged 'straw purchaser,' Jefferson Property Management ('JPM'); (2) a Paula Berckhoff was the signatory to Jefferson Property Management Corp.'s ('JPMC') resolution authorizing 'Paula Berckhoff' to sign documents on behalf of the company; (3) a Paula Berckhoff, as president of JPMC, signed a corporate resolution authorizing the defendants' daughter Rachel Amsellem 'to sign all documents on behalf of the corporation related to the purchase of the premises located at 83 Cathedral Avenue Hempstead, NY.' These documents are part and parcel of the alleged fraudulent short sale scheme charged in the Indictment.")

Letter of Feb. 7, 2017 at 2.) Left unexplained is the rationale for trying to prevent the same subject from being pursued with Berckhoff beyond a possible objection based on cumulativeness under Rule 403.[3]

In sum, and based on the information provided, the government's argument intended to bar Berckhoff from taking the stand on behalf of defendants is not convincing. She apparently has relevant information about the purported fraud, including the supposedly central role played by prosecution witness Pellegrini. To the extent she is no longer a named defendant, that information bears on possible pro-government bias harbored by her husband and conceivably herself.

II. Government's Application Concerning
    Atiases' Advice of Counsel Defense

By letter dated June 10, 2016 (amended on June 11, 2016), defendants set forth their belief that "the evidence will show that our clients relied upon the advice of counsel and participated in the short sale and subsequent transfer to Sacred Heart Academy without any intention of defrauding the Bank of America. Pellegrini is one of three lawyers that counseled and or dealt with our clients in regard to the transactions." (Defs.' Letter of June 10, 2016 at unnumbered page 7.)

---

[3] The Court notes that Berckhoff has recently moved to quash the trial subpoena served upon her by the defense. The arguments raised in that motion will be separately addressed.

For an advice of counsel defense to be charged, there must be evidence in the record which would permit the trier-of-fact to reasonably conclude that:

> First, [the] party seeking to avail himself of the defense must show that he honestly and in good faith sought the advice of counsel. Second, [that] party must establish that he fully and honestly put forth all the facts before his counsel. Last, the party must show that he followed counsel's advice in good faith and honestly, believing it to be correct and intending that his acts be lawful.

(Defs.' Request to Charge re: "Advice of Counsel - Negating Specific Intent," attached as Ex. 6 to Defs.' Letter of June 10, 2016.)

As further explained by the defendants, the "defense is applicable only when a party satisfies all three elements. Thus, even if the defendant can show some elements, the defense must be precluded if even one element cannot be satisfied." (*Id.*)

The three lawyers whose interaction with the defendants reportedly will serve as the predicate for the advice of counsel defense are (1) "Nicholas A. Pellegrini, a government cooperator" and likely prosecution witness at the upcoming trial, (2) "Pamela Lee,[who] was [according to the defense] consulted and retained to handle the short sale of 83 Cathedral Avenue in addition to [another] property," and (3) a "lawyer from Farrell Fritz [viz. Charles Strain], the attorney for Sacred Heart Academy," who supposedly had "intimate knowledge of the entire short sale

transaction and 'flip' to the school." (Defs.' Letter of June 14, 2016 at 1-2.)

The government's response to the Atiases' advice of counsel defense is multifaceted and includes:

(1) it is undisputed that Charles Strain from Farrell Fritz represented Sacred Heart Academy, the purchaser of the Cathedral Avenue property involved in the charged bank fraud and bank fraud conspiracy counts, not either or both of the defendants, (Govt's Letter of Feb. 3, 2017 at 1-2);

(2) "there is no evidence that . . . Pamela Lee . . . was representing defendants as the bank fraud unfolded," (*id*. at 2);

(3) the third attorney, Pellegrini, is not going to support the subject defense but rather as "a co-conspirator who pled guilty to the fraud . . . is expected to testify that defendants were well aware of the fraud and that he advised that to accomplish the fraud, they needed to conceal facts from and defraud the bank," (Govt's Letter of Jan. 11, 2017 at 2);

(4) even if, *arguendo*, defendants are not precluded from advancing an advice of counsel defense, "the government is entitled to all communications that touch on the relevant subject matter, including privileged documents," (Govt's Letter of June 13, 2016 at 1); and

(5) defendants should be barred from presenting evidence, either by taking the stand or through other means, concerning what a non-testifying attorney told either of them (Govt's Letter of Feb. 3, 2017 at 1-3).

The government's just listed five objections will now be addressed.

    1.   Advice of Counsel Defense with
          <u>Respect to Farrell Fritz Attorney</u>

The advice of counsel defense has been the subject of numerous in-court discussions and written submissions during the pendency of this case. Nothing has been offered by the defense to even suggest that the three aforementioned preconditions to mounting an advice of counsel defense with respect to Charles Strain exists. Simply, all available information indicates that the Farrell Fritz attorney represented Sacred Heart, not defendants. Accordingly, the term "advice of counsel" should not be employed in referring to Charles Strain. Doing so would be legally inappropriate and likely to mislead the jury.

    2.    Advice of Counsel Defense
          with Respect to Pamela Lee

The government, having reviewed relevant documents furnished by the defense, maintains that "there is no indication in the documents of any advice she rendered that could form the basis of the advice of counsel defense. There is also no indication that Pamela Lee was representing the defendants at the time of the bank fraud." (Govt's Letter of Jan. 11, 2017 at 2.) The defense believes otherwise.

If, contrary to the government's understanding, the defense has information that Lee provided legal advice to the defendants as to the transactions embodied in the charged fraud, they shall so advise the Court and the government with an accompanying proffer at least twenty-four hours before calling the witness to the stand so that I will be in a position to rule

on any objection broached by the government without unnecessarily delaying the proceeding. *See generally* Federal Rule of Criminal Procedure 2 ("These rules are to be interpreted to provide for the just determination of every criminal proceeding . . . and to eliminate unjustifiable . . . delay."). If that proffer addresses in a meaningful fashion the three prerequisites for an advice of counsel defense, the defense may be pursued. Otherwise, again, the term should not be used as to Lee.

        3.    Advice of Counsel Defense as to
            Government Witness Pellegrini

According to the government, Pellegrini will take the stand as part of its case. The Court, in the exercise of its discretion under Rule 611(b) of the Federal Rules of Evidence, will permit defense counsel to ask questions on cross-examination pertaining to legal advice, if any, Pellegrini furnished to either defendant even if the subject is beyond the ambit of direct. Such an effort, given the attendant circumstances, may prove futile but I am not prepared to summarily foreclose that line of inquiry.

As to the substance of the defense, counsel is directed to provide the Court and the government with notice and an accompanying proffer at the conclusion of his direct examination if Pellegrini is to be questioned in an effort to satisfy the preconditions for an advice of counsel defense and for the same reason just articulated as to Lee.

4. Government's Demand for All
   Communications Possessed by Defendants
   <u>Bearing on Advice of Counsel Defense</u>

The government asserts that "the law is clear that once this defense is asserted,[it] is entitled to all communications that touch on the relevant subject matter, including privileged documents." (Govt's Letter of Feb. 3, 2017 at 1.) Such notice, in the government's view, includes not only documentary evidence but also details as to "which attorney said what, where and when." (*Id*. at 3.)

The five cases cited by the government, however, do not support the broad-based proposition urged. Instead, those cases simply "recognize," in the language of *United States v. Espy*, "that a defendant's reliance on the advice of counsel defense waives the attorney-client privilege. These case make no mention that a defendant must notify the government of his intention to assert the defense." 1996 WL 560354 (E.D. La. Oct.2, 1996). Moreover, the Federal Rules of Criminal Procedure provide for the pretrial notice vis a vis three specifically named, and presumably exhaustive, defenses: alibi (Rule 12.1), insanity (Rule 12.2), and public authority (Rule 12.3). Which is to say, the government has not established that is has a "right" to pretrial notice as to the defense under discussion. Nonetheless the Court, as earlier indicated, has ordered that such notice, in effect, be provided as to Lee and Pellegrini given that the

government has raised legitimate concerns about the advice of counsel defense being improperly interjected into the proceedings with the concomitant risk that the jury will be diverted from its fact finding task.

In any event, the main thrust of the above discussion is largely academic. Defendants have represented that all the documents in their possession pertaining to the advice of counsel defense have "already [been] provided [to the] prosecutors." (Defs.' Letter of Feb. 7, 2017 at 3; *see also* Feb. 1, 2017 Tr. at pp. 32, 43, 45 and 47.) In addition, a precondition to defendants calling an advice of counsel witness to the stand will be to provide the Court, and, thus, indirectly to the government, with an overview of the anticipated testimony. Such a preview will be necessary under the attendant circumstances for me to address likely objections under Rules 401 and 403. Those two circumstances, viz., the government's possession of all relevant documents and defense proffers as to expected testimony should, as a practical matter, satisfactorily ameliorate the prosecution's valid concerns under the attendant circumstances.

     5.    Evidence About What a Testifying Attorney Said to Either Defendant Concerning the <u>Legality of His or Her Conduct</u>

It may be that a defendant or some other witness may be prepared to testify that he or she heard Strain, Lee or Pellegrini say something to the defendants prior to, or

contemporaneously with the commission of the fraud charged in Counts One and Two which indicated that their conduct vis a vis the Bank of America was lawful.  Assuming that the interaction between the particular attorney and defendant did not give rise to a valid advice of counsel defense, would the witness, nonetheless, be allowed to tell the jury the comments made by the out-of-court declarant?

If the out-of-court statement was legitimately offered to show the effect on the defendant-listener's state of mind, rather than for the truth of the matter asserted, the utterance, by definition, is not hearsay. *See* Fed. R. Evid. 801(c).  And such evidence obviously would be relevant as to whether the defendant under consideration had "the intent to deceive or defraud the bank." *See* Sand, Modern Federal Jury Instructions - Criminal, Instruction 37-3.

It is the government's position, however, that if the defense intends to limit its proof to placing out-of-court declarant's statements before the jury "without [also] producing the involved attorney," the entire inquiry constitutes "hearsay that should be precluded." (Feb. 1, 2017 Tr. at 51.) Understandably no evidentiary rule has been brought to my attention to suggest that a non-hearsay item of evidence somehow metamorphoses into hearsay if the proponent of the evidence does not call the out-of court declarant.

That does not mean, of course, that the proffered relevant non-hearsay information will necessarily be received into evidence. It may be excluded once the balancing process embodied in Rule 403 is undertaken. *See generally United States v. Scully*, 170 F. Supp.3d 439, 474 (E.D.N.Y. 2016). But that process cannot be done in the abstract. Central to the analysis is the particular information sought to be introduced. None of the subject statements allegedly made to the defendants by Sprain, Lee or Pellegrini relevant to the state-of mind of either defendant has been shared with the Court. Absent such specific information, evidentiary rulings cannot be made. As a result, no mention of any such items shall be made in the presence of the jury unless the Court decides, following argument outside their presence, that the proffer passes muster under Rule 403. All that can be said at this juncture is that the defendants' failure to call the involved out-of-court declarant will not, *ipso facto*, be fatal to defendants' non-hearsay proffer.

**SO ORDERED.**

Dated:  Central Islip, New York
        February 10, 2017          /s Denis R. Hurley
                                   Denis R. Hurley
                                   United States District Judge