```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,
                                        **AMENDED**[1]
          -against-                     MEMORANDUM AND ORDER
                                            14-CR-0403(DRH)
SOPHIA ATIAS and JOSEPH ATIAS,

               Defendants.
-------------------------------X
A P P E A R A N C E S:

For the Government:
    Robert Capers
    United States Attorney
    Eastern District of New York
    100 Federal Plaza
    Central Islip, New York 11722
      By: Charles Kelly, A.U.S.A.
          Burton T. Ryan, Jr., A.U.S.A.

For Sophia Atias:
    LaRusso Conway & Bartling, LLP
    300 Old Country Rd, Suite 341
    Mineola, New York 11501
      By: Robert P. LaRusso, Esq.

For Joseph Atias:
    Jeffrey T. Schwartz, Esq.
    Law Offices of Jeffrey T. Schwartz
    225 Broadway, Suite 2510
    New York, New York 10007

HURLEY, District Judge:
```

By letter dated February 20, 2017 ("Defs.' Feb. 20, 2017 Letter"), defendants seek, via a motion in limine, to preclude the government from introducing at trial "recently produced tax records due to its [sic] prejudicial impact on the

---

[1] The Amended Memorandum and Order differs from the Court's original Memorandum and Order filed on February 24, 2017 (see ECF No. 186), in that the word "convincingly" has been added in this decision in the "Discussion" section at page 5, second sentence. No other additions or amendments have been made.

defense of the charges in the indictment . . . under FRE 403."
(Defs.' Feb. 20, 2017 Letter at 1.)

POSITIONS OF THE PARTIES

The rationale underlying the motion is synopized by the defense thusly:

> We submit that the questionable tax documents that the government seeks to introduce at trial are inadmissible for a number of reasons, including (1) its [sic] irrelevancy to any meaningful issue at trial; and (2) its [sic] impermissible introduction of other criminal conduct, tax fraud, establishing our client's [sic] propensity to commit the charged crime prohibited by FRE 404(b), and the overriding prejudicial effect of such damaging evidence preventing the jury from fairly evaluating our defense that the defendants did not "knowingly intent" [sic] to submit a false loan application (Count 3) or intent [sic] to defraud the Bank of America (Counts 1 and 2) or steal Medicaid money from the Federal government.

Id. at 5.

The government, by letter dated and filed on February 23, 2017, addressed defendants' concerns seriatim.

As to relevancy, the government argues:

> [T]he records defendants seek to preclude from admission into evidence are divided chronologically into (i) the returns and related records for the years 2004-2008 ("The Early Tax Returns")(Government Exhibits ("GEx.") 46-50, 52), and (ii) such records for 2010-2013 ("The Later Tax Returns and Related Records"), GEx. 54-59.  The Early Tax Returns are relevant on Count Three, the False Loan Applications charge under Title 18, U.S.C. Section 1014 which relates to a loan application filed on June 1, 2007 and

-2-

> states, in relevant part, that: "the
> defendants SOFIA ATIAS and JOSEPH ATIAS
> stated and represented that defendant SOFIA
> ATIAS had been employed by the New York Forex
> Fund for the past three years and had a
> monthly income of $23,255 when, in fact, as
> the defendants then and there well knew and
> believed, she had not been so employed for
> the preceding three years and had no such
> income."

(Gov't's Feb. 23, 2017 Letter at 1-2, quoting from Count Three of the Indictment.)

The "[e]arly [t]ax [r]eturns," and/or related employment information furnished by defendants to their accountant, will demonstrate, the government proffers, that the representations as to her employment and income were wholly fabricated. Moreover, reference to the temporally pertinent corporate tax returns of New York Forex Fund, which supposedly paid her the claimed $23,255 per month, fails to reflect any such payments, or so the government contends. Id. at 2.

With respect to the "[t]he [l]ater [t]ax [r]eturns[2] and [r]elated [r]ecords," these documents represent part of the

---

[2] Although this category of documents is entitled "Later Tax Returns and Related Records," the government explains that "[t]hese documents, Government Exhibits 54-59, do not include any federal or state filed tax return. The records relate to two of defendants' companies, Cryoshape Global, Inc. and Incentives IQ, Inc. and include check registers for both companies submitted by defendants to their accountants (GEx. 55 & 58), Profit & Loss Statements for both companies prepared by their accountants based on information submitted by defendants (GEx. 54 & 57) and drafts of tax returns for the two companies prepared by their accountants based on information submitted by defendants (GEx. 56 & 59)." Id. at 3.

-3-

prosecution's proof as to the Medicaid fraud charged in Count Four. Id. at 3.

Their relevance, as posited by the government, runs along the following lines:

> [D]efendants continuously claimed to Medicaid to have no income and no resources from 2008-2014 and, by dint of those representations, received Medicaid upon their recertifications of such financial status. Yet, the records being objected to (GEx. 54-59) evidence significant income and resources during the same time period showing the falsity of the Medicaid recertification forms submitted by defendants. The evidence will show that Cryoshape Global and Incentives IQ are two of defendant Joseph Atias's companies. Both had resources and/or income in the Medicaid years. For example, income from Incentives IQ, Inc. in 2011 is over $36,000 (Exhibit 57) and assets in Cryoshape Global in both 2011 and 2012 is [sic] over $25,000 (B 3779, 3785) (GEx. 56). Further, assets in Incentives IQ are reported as over $94,000 in 2012 (GEx. 59). During 2012, defendant Sofia Atias was claiming to have no income or resources to Medicaid but, at the same time, defendant Sofia Atias was issuing checks on the Incentives IQ checking account for thousands of dollars of discretionary expenses. These facts prove the falsity of defendants' sworn Medicaid recertification forms and are core evidence to prove Count Four, the Medicaid Fraud charge.

Id. at 3-4.

Attention will now be focused on the government's position as to defendants' second objection, i.e. that introduction of the "tax documents" will "impermissibl[y] introduc[e] . . . other criminal conduct, tax fraud [into the

record, thereby] establishing our client's propensity to commit the charged crime prohibited by FRE 404(b), and the overriding prejudicial effect of such damaging evidence preventing the jury from fairly evaluating our defense that the defendants did not "knowingly intent" [sic] to submit a false loan application (Count 3) or intent [sic] to defraud the Bank of America (Counts 1 and 2) or steal Medicaid money from the Federal government." (Defs.' Feb. 20, 2017 Letter at 5.) The government views this as a false concern in that it "is not claiming that defendants' tax returns are anything but accurate as drafted and/or as filed." (Gov't's Feb. 23, 2017 Letter at 1.)

## DISCUSSION

The relevance of the general thrust of the information the government seeks to place before the jury clearly falls within the ambit of FRE 401. Indeed, defendants do not convincingly contend to the contrary in either their February 20th letter or in their Reply letter (erroneously) dated February 20, 2017 and filed today ("Defs.' Feb. 24, 2017 Letter"). See, e.g., Defs.' Feb, 21, 2017 Letter at 5 ("The government will undoubtedly argue (1) that the individual and Forex tax return evidence demonstrates that the defendant Sofia Atias was neither employed by Forex nor earning $23,000 per month as represented in the loan application dated June 6, 2007, thus establishing the falsity of the document; and (2) that the

-5-

remainder of the individual returns and corporate records for Forex, Cryoshape and Incentive prove the personal use of the funds from the $210,000 inheritance and over $360,000 proceeds from the sale to Sacred Heart Academy and the failure to report income on the Medicaid applications between, at least, late 2011 through 2013.") Instead, defendants' major concern is that the jury, upon reviewing corporate "general ledgers" may possibly expand their function as fact-finders to include rendering judgment on an uncharged "classic tax fraud scheme." (Defs.' Feb. 24, 2017 Letter at 1.) They also foresee the trial becoming unduly complicated due to numerous tangential issues given the "over two thousand pages" of records provided to the defense during discovery. (Defs.' Feb. 20, 2017 Letter at 1.)

Before discussing defendants' concerns, the purpose of in limine motions warrants discussion. As recently capsulized by United States District Court Judge Victor A. Bolden in Hannah v. Wal-Mart Stores, Inc., 2017 WL 690179, *2 (D. Conn. Feb. 21, 2017):

> The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine."
>
> Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds. Courts considering a motion in limine may

>reserve judgment until trial, so that the
>motion is placed in the appropriate factual
>context.

(internal citations omitted).

Defendants, as movants, bear "the burden of establishing that the evidence is not admissible for <u>any</u> purpose." <u>Wilder v. World of Boxing, LLC</u>, ___ F. Supp. 3d ___, 2016 WL 7335669 *4 (S.D.N.Y. Dec. 12, 2016)(emphasis added). Usually motions <u>in</u> <u>limine</u> are addressed to "discrete items of evidence" rather than "whole topics and sources of prospective evidence." See <u>MF Global Holding Ltd. v. PricewaterhouseCoopers, LLP</u>, ___ F. Supp. 3d ___, 2017 WL 663565, *1 (S.D.N.Y. Feb. 3, 2017). However, where as here, total preclusion is sought, logic compels that the same burden rests with movant.

As indicated earlier, some of the categories of documents referenced by the government are indisputably relevant. Which is to say, defendants have not met their burden and, accordingly, their across-the-board preclusion motion is denied.

In reaching the above conclusion I have considered the possibility, cited by the defense, of the jury considering uncharged criminal tax evasion conduct on the part of one or both of the defendants. In that regard, the government has represented that no such argument will be advanced by them, inferentially or otherwise. They will be held to that commitment and, of course, the jury will be instructed to determine whether

-7-

the prosecution has met its burden of proof vis-a-vis the offenses charged in the indictment and nothing else.  Juries are presumed to follow such limiting instructions.  See United States v. Memoli, 648 Fed. App'x 91, 94-95 (2d Cir. 2016).

Finally, before any specific document may be placed before the jury, relevance and a proper foundation must be laid linking the proffered evidence to one or both defendants. Possibly such linkage may be provided, e.g., through the testimony of defendants' accountant or via properly authenticated documents otherwise tied to the defendant under consideration. And the balancing process under FRE 403 must be undertaken as well.

To partially reiterate, however, it appears that many of the subject documents will ultimately prove to be admissible and thus the motion to preclude in toto is denied.

CONCLUSION

For the reasons indicated, defendants' February 20, 2017 blanket motion to preclude is denied.  This memorandum and order, however, should not be construed as an advance ruling as to the admissibility of any specific item of evidence that the government may offer during the course of the trial.

SO ORDERED.

Dated: February 27, 2017
     Central Islip, New York

                        /s/
                        DENIS R. HURLEY, U.S.D.J.