UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

UNITED STATES OF AMERICA,                    **MEMORANDUM AND ORDER**

  - against -                                2:14-cr-403-GRB-SIL-1

SOFIA ATIAS,                                 2:21-cv-5769-GRB

                  Defendant.

---------------------------------------------------------------X

UNITED STATES OF AMERICA,

  - against -                                2:14-cr-403-GRB-SIL-2

JOSEPH ATIAS,                                2:21-cv-5785-GRB

                  Defendant.

---------------------------------------------------------------X

**FILED**
**CLERK**

3:10 pm, Sep 20, 2022

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES**

**LAW OFFICES OF DAVID ZARMI**
Attorneys for Defendant/Petitioner Sofia Atias
8950 W Olympic Blvd., Ste. 533
Beverly Hills, CA 90211
By:   David Zarmi, Esq.

**Joseph Atias,** *pro se*

**BREON PEACE**
**UNITED STATES ATTORNEY FOR THE**
**EASTERN DISTRICT OF NEW YORK**
610 Federal Plaza
Central Islip, NY 11722
By:   Charles P. Kelly Esq.

**GARY R. BROWN, District Judge:**

## INTRODUCTION

      Presently before the Court are motions to vacate pursuant to 28 U.S.C. § 2255

filed by Defendants/Petitioners Sofia Atias and Joseph Atias.  For the reasons stated

below, the motions are denied.

## BACKGROUND

In March 2017, Defendants were found guilty of bank fraud, conspiracy to commit bank fraud, and theft of government funds.  DE 237.  They appealed the convictions in August 2018, DEs 333–35, 337, which the Second Circuit affirmed in a Summary Order and Judgment dated April 1, 2020.  DE 264, *United States v. Atias*, Nos. 18-2059, 18-2259 (2d Cir.) ("*Atias* Appeal").  Defendants petitioned the Circuit for a panel rehearing.  DE 277.  The Second Circuit denied their petition on July 15, 2020.  DE 281.  Defendants did not file a petition for certiorari with the Supreme Court.  *See* DE 365.  Defendants filed the instant 28 U.S.C. § 2255 petitions with this Court on October 15, 2021.  DE 365, 366.[1]

On May 26, 2022, this Court ordered Defendants to show cause why their motion should not be dismissed as untimely.  DE 372.  Defendants responded on June 20, 2022.  DE 374.  The government replied on July 18, 2022.  DE 375.

## DISCUSSION

### I.    Statute of Limitations

A one-year limitations period applies to § 2255 petitions, which starts to "run from the latest of the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  "[F]or federal criminal defendants who do not file a petition for certiorari with [the Supreme Court] on direct review, § 2255's one-year limitation period starts to run," *i.e.* a conviction becomes final, "when the time for seeking such

---

[1]    Joseph Atias's submission consists of only a request "to allow him to join in the argument submitted by [Sofia Atias] in her motion . . . as they pertain to him."  DE 366.  Under the present circumstances, that application is granted.

review expires." *Clay v. United States*, 537 U.S. 522, 532 (2003).  Under Supreme Court Rule 13, a party must petition for certiorari "within 90 days" of either "the date of entry of the judgment or order sought to be reviewed" or the date on which rehearing is denied by the lower court.

Here, Defendants' time to petition the Supreme Court for a writ of certiorari began on July 15, 2020 (the date on which the Second Circuit denied their rehearing petition) and thus expired on October 13, 2020 (ninety days later).  As a consequence, the one-year limitations period to bring their § 2255 petitions lapsed on October 13, 2021.  Defendants  filed their § 2255 petitions on October 15, 2021, *i.e.*, two days after the deadline.  Neither Sofia nor Joseph Atias argues their filings are timely.  Rather, petitioners claim equitable tolling, a doctrine that would permit relief only if petitioners can show "'(1) that [they have] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioners argue, unconvincingly, that extraordinary circumstances prevented them from timely filing their § 2255 petition, although the petition parrots, nearly verbatim, their prior request for a rehearing before the Second Circuit. *Compare* DE 365 at 16, 18–19, 22–23, 25–26, 29–32 *with* Atias Appeal, DE 277 at 6–12.  Given that the brief was largely written before the limitations period even began, petitioners cannot credibly contend they could not timely file.  *See*, *e.g.*, *Marte v. Brown*, 2010 WL 1644271, at *4 (S.D.N.Y. Apr. 21, 2010) (Sullivan, J.) ("Petitioner

has previously raised the same claims of prosecutorial misconduct and deprivation of a fair trial in other appeals, indicating that his alleged limitations are not exceptional circumstances that would justify his failure to file a timely habeas petition."). Additionally, their attorney did not fall ill with COVID for more than three months after receipt of the purported "newly discovered" evidence concerning Medicaid eligibility which forms the principal basis for their § 2255 petition.  *See* Ex. B to DE 365 (letters dated April 2021); Zarmi Decl., ¶¶ 8, 11 (counsel fell ill in August 2021).

Thus, the petitions are barred by the statute of limitations, and must be denied. However, out of an abundance of caution, the Court has considered the substance of the petitions, and finds them without merit as discussed below.

## II.    Jurisdiction

Petitioners argue this Court lacked jurisdiction over the underlying Medicaid fraud prosecutions because determinations of eligibility and fraud are delegated to state agencies in the first instance.  DE 365 at 15–28.  The cases cited in support of this novel argument proved inapposite, as these authorities address the issue of a district court's power to hear civil cases brought by applicants challenging Medicaid determinations.  *See Arkansas Dep't of Health & Hum. Servs. v. Smith*, 370 Ark. 490, 491 (2007) (state court lacks jurisdiction to grant petitioner's request for an increase in certain Medicaid funds); *Alford v. Mississippi Div. of Medicaid*, 30 So. 3d 1212, 1221 (Miss. 2010) ("the plain language of the [Medicare Catastrophic Coverage Act] does not confer jurisdiction upon our state courts to increase the [minimum monthly maintenance needs allowance] and [community spouse resource allowance] prior to an exhaustion of administrative remedies"); *Mykonos v. United States*, 59 F. Supp. 3d

100, 106 (D.D.C. 2014) (applicant who claimed she was wrongfully denied Medicaid benefits failed to exhaust administrative remedies).  None of these cases concern the criminal statutes under which petitioners were found guilty, 18 U.S.C. §§ 1344, 1349 (bank fraud) and 18 U.S.C. § 641 (theft of government funds).  None of these authorities bear upon the distinct question of whether this Court has jurisdiction to hear a case of Medicaid fraud brought by criminal prosecutors.  The thought is that the United States was required to seek a determination from New York's Medicaid agency that the petitioners were ineligible before criminally prosecuting them for Medicaid fraud. DE 365 at 26.  Although it is undisputed that the applicable state agencies have the authority to make Medicaid eligibility determinations in the first instance, neither law nor common sense dictate that this somehow deprives federal grand juries of indicting individuals believed to have engaged in a fraud scheme aimed at improperly obtaining Medicaid funds.

### III.    Sufficiency of the Evidence

Title 18 U.S.C. § 641 criminalizes the theft of  "any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof."  "To obtain a conviction under . . . § 641, the government must prove that money was intentionally embezzled, stolen or converted, that the money taken was the property of the United States, and that the United States suffered some loss." *United States v. Gibbs,* 704 F.2d 464, 465 (9th Cir. 1983).  *See United*

*States v. Girard*, 601 F.2d 69, 70–71 (2d Cir. 1979) (18 U.S.C. § 641 covers intangible property of the United States).

Petitioners argue that there was insufficient evidence to support their 18 U.S.C. § 641 conviction because the government was not the victim of the fraud. Courts evaluate a number of factors to determine whether funds retain a sufficiently federal character to sustain jurisdiction under 18 U.S.C. § 641, including: "(1) [the existence of a] specific reversionary interest in the federal government, (2) the statutory requirement that funds be used for the purpose intended, and (3) whether the recipient is required by federal law to maintain financial records, file reports, adopt government methods of management, or submit to federal oversight." *United States v. Tana*, 618 F. Supp. 1393, 1395 (S.D.N.Y. 1985) (quoting *United States v. Barreda*, 607 F.Supp. 419, 420 (N.D. Ind. 1985)).  "The greater the control, the more likely the courts are to find a violation of section 641." *Id.*

Here, it was established at trial that the federal government provides over half of Medicaid funds distributed in New York State.  *See* DE 244-1, Tr. at 384:16-18 (federal government provides approximately 54% of Medicaid funds in New York State).  As Assistant Director of the Office of Investigations for the Nassau County Department of Social Services ("NCDSS") Heather Griffin explained in a sworn statement, although the judgment in this case ordered restitution be made to the New York State Medicaid Fraud Office, "adjustments are made to credit part of the restitution payment to the account of the United States of America, reflecting the contributions of the United States to New York State Medicaid, which is

approximately fifty percent." DE 368-1, Aff. of Heather Griffin ¶ 11. Because the federal government provides the majority of New York's Medicaid funds and is eligible for credits when such funds are returned, the federal government retains sufficient control over those funds to sustain jurisdiction. Thus, the Medicaid funds at issue are property of the United States under 18 U.S.C. § 641.

The cases petitioners cite are distinguishable because they all involved situations where a defendant fraudulently obtained funds from a *recipient after distribution*. *See United States v. Gavin*, 535 F. Supp. 1345, 1346–49 (W.D. Mich. 1982) ("[18 U.S.C. § 641] does not provide for continued federal ownership of the loaned funds" after their delivery to the recipient); *United States v. Farrell*, 418 F. Supp. 308, 310 (M.D. Pa. 1976) (theft of a school district's TV set purchased with Title I educational funds is insufficient to support an 18 U.S.C. § 641 indictment where the government neither possessed nor had title to the TV set); *United States v. Fleetwood*, 489 F. Supp. 129, 133–34 (D. Or. 1980) (theft of US bonds belonging to private citizens is insufficient to support an 18 U.S.C. § 641 conviction because the only potential loss to the government is the cost of replacing the bonds), *disapproved of by United States v. Wyatt*, 737 F.2d 1499 (9th Cir. 1984). Here, the funds were misappropriated directly from the agency charged with their distribution, as well as the return of such funds to the United States. Petitioners also cite *United States v. Sabri*, 183 F. Supp. 2d 1145 (D. Minn. 2002), which held that Congress lacked authority to prohibit bribery intended to influence an organization receiving federal funds in excess of $10,000 absent a nexus between the criminal activity and the federal funds, a case

that is not only wholly irrelevant, but was reversed on appeal. *See United States v. Sabri*, 326 F.3d 937 (8th Cir. 2003) (reversing district court dismissal of charges), *aff'd and remanded*, 541 U.S. 600 (2004).

Additionally, petitioners argue that the evidence is insufficient to support their conviction because NCDSS never made a determination that the Atiases were ineligible for Medicaid.  However, the Second Circuit has already found that the evidence at trial was sufficient because the government presented evidence of "several streams of income that exceeded [the $3,000 income] threshold: certain corporate payments covering the Atiases' personal expenses; an inheritance; the receipt of the proceeds of the 83 Cathedral Avenue transactions; and access to a credit card for $50,000 to cover personal expenses." *United States v. Atias*, 807 F. App'x 80, 85 (2d Cir. 2020).  For these reasons, the evidence presented at trial was sufficient to support a conviction under 18 U.S.C. § 641.

## IV.    Newly Discovered Evidence

At its heart, the petition claims actual innocence based upon newly-discovered exculpatory evidence.  The new evidence consists of certain correspondence with state Medicaid officials and related documents, which, they argue, prove they were eligible for Medicaid at all the relevant times and that, even today, Medicaid "is not seeking reimbursement for Medicaid correctly paid."  DE 365 at 32.

Interestingly, neither the Supreme Court nor the Second Circuit has recognized claims of actual innocence as cognizable in the §2255 context.  *Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010) ("The Supreme Court has not finally

resolved the issue of whether there is a federal Constitutional right to be released upon proof of actual innocence" and citing *Dist. Attorney's Off. v. Osborne*, 557 U.S. 52, 71 (2009)); *see DiMattina v. United States*, 949 F. Supp. 2d 387 (E.D.N.Y. 2013) (citing Third, Fifth, Seventh, Eighth Circuit precedent rejecting the existence of the claim). The Court need not decide that nettlesome issue here, as the Atiases have failed to submit anything even approaching the high threshold that might warrant such relief. *Cf. Herrera v. Collins*, 506 U.S. 390, 417 (1993) ("[T]he threshold showing for such an assumed right would necessarily be extraordinarily high.").

At trial, the government offered significant evidence concerning the Atiases' Medicaid eligibility, a matter vigorously litigated at trial. This included testimony from Heather Griffin of the NCDSS averring that "defendants were not eligible for Medicaid" at the relevant times. Ex. A to DE 365, March 1, 2018 Tr. at 10:20–23, 12:9–13:11. The defense called an expert witness in an unsuccessful effort to rebut Griffin's testimony. *See, e.g.*, DE 244-12, March 23, 2018 Tr. at 2994:9–2995:19. The new Medicaid eligibility evidence is therefore cumulative to that pre-existing in the record.

Further, the government's submission includes an affidavit from Griffin to place some of the newly-discovered evidence in context. *See* DE 368-1, Aff. of Heather Griffin ¶ 8. Griffin, an NCDSS employee since 1995, explains that the Office of Investigations keeps only paper records "[f]or a variety of reasons, including client privacy." *Id.* ¶ 4. By consequence, NCDSS's electronic databases "do[] not include information or data from [the] fraud or overpayment unit." *Id.* Griffin explains that

the "Notice of Intent of Discontinue/Change Medicaid Coverage" ("NIDCMC") form upon which petitioners rely was generated from one such electronic database. *Id.* ¶ 3. Griffin further explains that the NIDCMC was issued based upon incomplete information and therefore must have been "issued in error." *Id.* ¶¶ 5–8.

In no event can the selected, contested documents submitted here undermine the jury's determination based upon a completed trial record. Thus, petitioners have failed to raise a colorable issue as to the sufficiency of the evidence supporting their convictions.

## V.    Ineffective Assistance of Counsel

The Atiases next contend that their trial and appellate counsel provided ineffective assistance. Ineffective assistance requires showing that defense counsel's representation fell below an objective standard of reasonableness and that, but for that deficient representation, there is a reasonable probability that the result at trial would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984).

The Atiases argue their counsel provided ineffective assistance through a failure to raise earlier the arguments asserted in the instant motion to vacate. At the outset of this opinion, the Court noted that, at least with respect to their first two arguments herein, the instant motion copies, nearly verbatim, their appellate counsel's arguments in the petition for rehearing to the Second Circuit. *Compare* DE 365 at 16, 18–19, 22–23, 25–26, 29–32 *with* Atias Appeal, DE 277 at 6–12. Thus, the record belies the asserted factual basis for ineffective assistance as to appellate counsel, who did raise the subject arguments before the Second Circuit.

Likewise, the contention that trial counsel "fail[ed] to ever simply request an eligibility determination from NCDSS or the New York Department of Health" falls short of *Strickland*'s second prong.  DE 365 at 35.  "In assessing prejudice stemming from the failure to investigate and introduce certain evidence, a court must consider '*all* the relevant evidence that the jury would have had before it' had the evidence been introduced, including unfavorable evidence."  *Barnes v. Burge*, 372 F. App'x 196, 199 (2d Cir. 2010) (quoting *Wong v. Belmontes*, 558 U.S. 15, 20 (2009) (per curiam) (emphasis in original)).  "[A]ctions or omissions that 'might be considered sound trial strategy' do not constitute ineffective assistance."  *United States v. Berkovich*, 168 F.3d 64, 67 (2d Cir. 1999) (quoting *Strickland*, 466 U.S. at 689).  First, trial counsel did introduce evidence of the Atiases' Medicaid eligibility—namely, through expert testimony.  *See, e.g.*, DE 244-12, March 23, 2018 Tr. at 2970–3002.  That is to say, such evidence would be cumulative of that in the record.  Second, this argument flows from the Atiases' view of their new evidence—*i.e.*, evidence not necessarily available at the time of trial—which, as discussed, the Court does not share.  *See supra*.  Third, whether such evidence would be favorable to the Atiases is dubious; they ask the Court to believe that, at the time of trial, the NCDSS would deem the Atiases Medicaid eligible, despite the findings and testimony to the contrary.  March 1, 2018 Tr. at 10:20–23, 12:9–13:11, Ex. A to DE 365.  "[A]s a general matter, when there is 'reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged

as unreasonable.'" *Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691).

Lastly, the Atiases contend their trial counsel was ineffective by virtue of his failure to "move to sever the Medicaid and bank fraud prosecutions." DE 365 at 35–36. "[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation." *United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987). The Atiases have failed to persuade the Court that their motion to sever would have had a solid foundation. Characterizing the bank fraud and theft of government funds charges as "virtually unrelated" misses the fact that they "are of the same or similar character"—concealing financial information that would have materially affected the amount the banks and the government would have given the Atiases—such that they are properly joined under Federal Rule of Criminal Procedure 8(a). *Compare* DE 140, Second Superseding Indictment ¶¶ 24, 26 ("concealing that fact that there was a ready and willing buyer that would obviate the need for a short sale"), *with United States v. Atias*, 2017 WL 6459477, at *17 (E.D.N.Y. Dec. 18, 2017) ("[D]efendants accomplished the charged theft via a pattern of 'concealment' . . . such as . . . deciding not to report to DSS [] approximately half million dollars received"). "Where joinder is proper, the court *may* sever the offenses for purposes of trial under Federal Rule of Criminal Procedure 14 if the defendant meets the 'heavy burden' of showing that he would experience 'substantial prejudice' absent severance." *Castillo v. United States*, 2010 WL 3912788 at *11 (S.D.N.Y. Sept. 8, 2010) (quoting *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994)). The

Atiases do not carry their heavy burden; they assert in conclusory and circular fashion that keeping the counts together "clearly increased the risk of conviction in both cases from sheer prejudice." DE 365 at 35–36. Based on the arguments presented, the "motion to sever the offenses charged would likely have failed," and, therefore, "it was not unreasonable of [the Atiases'] counsel" not to move to sever. *Castillo*, 2010 WL 3912788, at *11.

Accordingly, the Atiases have failed to establish their trial and appellate counsel provided ineffective assistance.

## VI.    Spillover Prejudice

Lastly, the Atiases argue that their convictions for bank fraud were tainted with spillover prejudice because "the improper Medicaid prosecution took up so much of the trial and was so intertwined" with the bank fraud charges. DE 365 at 36. "When an appellate court reverses some but not all counts of a multicount conviction, the court must determine if prejudicial spillover from evidence introduced in support of the reversed count requires the remaining convictions to be upset." *United States v. Rooney*, 37 F.3d 847, 855 (2d Cir. 1994). No such reversal has occurred. Rather, the above analysis reflects that the Medicaid conviction was proper, rendering the argument a nonstarter.

Even if the Medicaid conviction were reversed, there is nothing from which to infer that the Medicaid-related evidence affected the jury's verdict on the bank fraud counts. Indeed, notwithstanding the Medicaid conviction, the jury decided to acquit on Count 3, a False Loan Application charge – undermining any argument of spillover

prejudice.  In evaluating a claim of spillover prejudice, it is hard to imagine anything more telling than the jury's acquittal of petitioners on an independent count.

## CONCLUSION

For the reasons discussed above, the Atiases' motions to vacate pursuant to § 2255 are denied.


**SO ORDERED.**

Dated: Central Islip, New York                     /s/  Gary R. Brown
       September 20, 2022                      GARY R. BROWN
                                         United States District Judge